COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-08-146-CV

 

 

IN THE
INTEREST OF M.C.,

A CHILD                                                                                               

 

                                                  ------------

 

             FROM THE 325TH
DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------








After a bench trial, the trial court terminated
Appellant C.C.=s parental rights to his son
M.C.[2]  In three issues, Appellant contends that the
evidence is factually insufficient to support the trial court=s
findings that he knowingly placed or knowingly allowed M.C. to remain in
conditions or surroundings that endangered his physical and emotional
well-being, that Appellant engaged in conduct or knowingly placed M.C. with
persons who engaged in conduct that endangered his physical or emotional
well-being, and that the termination of the parent-child relationship between
Appellant and M.C. is in M.C.=s best
interest. Because the evidence is factually sufficient to support the findings,
we affirm the trial court=s order of termination.

In his second issue, Appellant contends that the
evidence is factually insufficient to show that he engaged in conduct or
knowingly placed M.C. with persons who engaged in conduct that endangered M.C.=s
physical or emotional well-being.  As we
have explained in a similar case, 

Under section 161.001(1)(E) of the Texas Family Code, the term Aendanger@ means to expose to loss
or injury, to jeopardize.  Accordingly,
when analyzing a jury=s findings pursuant to
subsection (E), we must determine whether sufficient evidence exists that the
endangerment of the child=s physical well‑being
was the direct result of the parent=s conduct, including acts, omissions, or failures
to act.  Termination under section
161.001(1)(E) must be based on more than a single act or omission; a voluntary,
deliberate, and conscious course of conduct by the parent is required.  However, it is not necessary that the parent=s conduct be directed at
the child or that the child actually suffer injury.  The specific danger to the child=s well‑being may be
inferred from parental misconduct standing alone.

 

To determine whether termination is necessary, courts may look to
parental conduct both before and after the child=s birth.  Further, a father=s conduct prior to the
establishment of paternity may be considered as evidence of an endangering
course of conduct.  Consequently,
scienter is only required under subsection (E) when a parent places the child
with others who engage in an endangering course of conduct.

 








As a general rule,
conduct that subjects a child to a life of uncertainty and instability
endangers the physical and emotional well‑being of a child.  Drug use and its effect on a parent=s life and his ability to
parent may establish an endangering course of conduct.[3]


 

The
evidence shows that CPS received a referral against Appellant in January 2007
for neglectful supervision and drug use, among other things.  A CPS investigator visited the home and spoke
to M.C., who was twelve years old at the time of trial.  M.C. denied any personal knowledge of drug
use by his father but reported witnessing domestic violence between Appellant
and his then estranged wife N.C.  M.C.
told the investigator that his father had broken a door to get to N.C., and the
investigator saw a crack in a door while at the home.  At some point, M.C. also reported to CPS that
Appellant had punched holes in the walls at different houses that they had
lived in over the past several years when he was angry at N.C. and that
Appellant and N.C. had fought in the street once, and the police had come.  M.C. did not report that Appellant was ever
physically violent with another person.








The day
after CPS received the referral and investigated the home, Appellant admitted
to the investigator that he had been using methamphetamine for the past nine
months and had last used methamphetamine two weeks earlier.  He also admitted to using methamphetamine at
the residence while M.C. was sleeping as well as to using drugs elsewhere with
N.C.

CPS
removed M.C. from the home after Appellant subpoenaed the investigator to
appear at his divorce trial.  The
investigator testified that the removal was necessary because Appellant would
not work services, voluntarily place M.C. with other family members, or take
drug tests.

In May 2007, Family Court Services (FCS) became involved because
of the pending divorce of Appellant and N.C. 
Appellant took court-ordered drug tests in May and June, but not in the
following five months during which FCS was still involved.  His May 30, 2007 hair sample tested positive
for amphetamines and methamphetamine, but he testified that a later test was
negative.

At trial, Appellant admitted to being a drug addict and that using
drugs was reckless behavior for a parent. 
He admitted testing positive for and using methamphetamine after CPS
removed M.C. from the home and as recently as three-and-a-half weeks before
trial; he also admitted that he had used methamphetamine daily a year before
trial.  He testified that he did not
remember where he used drugs while the case was pending because he had
blackouts.








Appellant testified that he was bipolar and severely depressed,
that he made many threats of suicide after M.C.=s removal, and that he actually had pills (Seroquel, which he
later testified were to help him sleep and not have night terrors) in his hand
to take because he Ajust wanted to sleep, sleep forever@ at a point within the last three months before trial.  He also testified, AI=ve just forgotten who I was lately.  I don=t even know what=s happening in my life[,]@ and AI wake up, I don=t even know who I am.  I
need help.@

Appellant admitted that he and N.C. had shoved each other.  He also admitted that he had broken a door in
two to get to N.C.  He testified that
M.C. was in another room at the time but conceded that M.C. would have heard
the altercation.  Appellant admitted that
he would also punch holes in the wall whenever he would get agitated and that
he would get agitated whenever N.C. threatened to kill herself.  He admitted that those behaviors did not
provide an appropriate, safe, healthy environment for M.C.

Additionally, an aggravated sexual assault of a child complaint
involving a fifteen-year-old female had been filed against Appellant at the time
of trial, although the case had not yet been submitted to the grand jury.  The CPS caseworker testified that Appellant
told her that








he was a victim . . . of a 15-year-old [the complainant] who had
raped him.  He stated that she was spending
the night, . . . that he was caring for her and her two brothers, . . . and
that while he was asleep, she had gotten on top of him, fully penetrated
himself, and that he was dreaming that it was [N.C.], his ex-wife, and then he
woke up and realized that it wasn=t . . . and rolled her over, and he got up. 

This alleged incident occurred after M.C.=s removal.

Applying the appropriate standard of review,[4] we hold
that the evidence is factually sufficient to show that Appellant engaged in
conduct or knowingly placed M.C. with persons who engaged in conduct that
endangered M.C.=s physical or emotional well-being.  We therefore overrule his second issue and do
not reach his first issue.[5]








In his third issue, Appellant contends that the evidence is
factually insufficient to show that termination of his parental rights to M.C.
is in M.C.=s best interest.  In
addition to the above evidence, the evidence at trial showed that Appellant
loved his son and had ensured his son=s school attendance before the removal.  After the removal, Appellant regularly
visited with his son and completed some of the services listed in the family
service planCparenting classes, a psychological evaluation, and a drug/alcohol
assessment.  He refused Afurther sexual assessment@ (a plethysmograph) absent court order, attended some counseling
but did not complete it, and did not complete drug treatment, although he
testified that he had a few days of inpatient care and had attended NA
meetings.  Even though he had told CPS
while the case was pending (and he was employed) that he made too much money to
get outpatient drug treatment, at trial, after he had lost his job, he
testified that he wanted outpatient drug treatment and would go to inpatient
treatment if the State paid for it.

Appellant testified that he needed additional help in response to
the State=s question regarding his ability to meet M.C.=s daily needs.








At the time of trial, M.C. was doing well in a foster home and
passing his classes in school.  He was
seeing a therapist weekly and taking medication for ADHD and anger management
issues.  M.C. wanted to live with his
father, but his ad litem reported that M.C. Aknows his dad has problems, and he can=t live with him, and he wanted to live with his [stepmother,
N.C.].@ N.C. had visited M.C. regularly during the pendency of the
termination case and was planning to get her own apartment the following
January.  The State planned to conduct a
home study if and when N.C. got her own apartment and evaluate her for adoptive
placement.  If that plan failed, then the
State planned to place M.C. in a dual licensed home with a goal of
adoption.  M.C.=s ad litem reported that he is very bright and very
adoptable.  N.C. did not testify.

Applying the appropriate standard of review[6] and
considering the Holley[7] factors
and the statutory factors for evaluating Appellant=s willingness and ability to provide M.C. with a safe environment,[8] we hold
that the evidence is factually sufficient to support the trial court=s finding that the termination of Appellant=s parental rights is in M.C.=s best interest.  We
therefore overrule Appellant=s third issue.

Having held the evidence factually sufficient to support the trial
court=s findings that Appellant engaged in conduct that endangered M.C.=s physical or emotional well-being and that the termination of the
parent-child relationship between Appellant and M.C. is in M.C.=s best interest, we affirm the trial court=s order of termination.

PER CURIAM

PANEL:  DAUPHINOT, J.; CAYCE, C.J.; and LIVINGSTON,
J.

 

DELIVERED:  November 26, 2008

 











[1]See Tex. R. App. P. 47.4.





[2]M.C.=s mother=s right were also
terminated, but she did not appeal.





[3]In re R.W., 129 S.W.3d 732, 738B39 (Tex. App.CFort Worth 2004, pet.
denied) (citations omitted).





[4]See Tex. Fam. Code Ann. ' 161.001(1)(E) (Vernon
Supp. 2008); In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006); In re
C.H., 89 S.W.3d 17, 28 (Tex. 2002).





[5]See Tex. R. App. P. 47.1; In
re E.M.N., 221 S.W.3d 815, 821 (Tex. App.CFort Worth 2007, no
pet.).





[6]See Tex. Fam. Code Ann. ' 161.001(2); H.R.M.,
209 S.W.3d at 108; In re R.R., 209 S.W.3d 112, 116 (Tex. 2006); C.H.,
89 S.W.3d at 28.





[7]Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).





[8]See Tex. Fam. Code Ann. ' 263.307(b) (Vernon
2002).